Susan L. Meter – State Bar No. 236133
  E-mail: smeter@kantorlaw.net
Elizabeth Hopkins – State Bar No. 324431
  E-mail: ehopkins@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, CA 91324
Telephone: (818) 886-2525
Facsimile: (818) 350-6272

Attorneys for Plaintiff,
LAURIE K. ENGEL

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURIE K. ENGEL,<br><br>            Plaintiff,<br><br>    vs.<br><br>FARMERS GROUP, INC., PLAN ADMINSTRATOR FOR THE FARMERS GROUP, INC. EMPLOYEES' PENSION PLAN and WILLIS NORTH AMERICA INC. dba WILLIS TOWERS WATSON,<br><br>            Defendants. | CASE NO. 2:20-cv-00245<br><br>**COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; ENFORCEMENT AND CLARIFICATION OF RIGHTS; BREACH OF FIDUCIARY DUTIES AND DEMAND FOR PRE-JUDGMENT AND POST-JUDGMENT INTEREST AND ATTORNEYS' FEES AND COSTS** |

## INTRODUCTION

A 36-year employee of Farmers Insurance and his wife call the employer's pension plan helpline.  They tell the representative the employee has cancer and it is uncertain if he will return to work, but they want to assure that his wife will receive the 100% joint and survivor pension option if he dies.  The plan representative misadvises them that if the employee requests a retirement kit and signs the form to elect the 100% option, his wife will receive the 100% joint and survivor benefit, even

if death occurs before the form is submitted and the benefits commence. The plan representative does not advise them of other ways to achieve the employee's objectives. A few days later, the plan representative calls the employee to correct her erroneous advice but is unable to explain to the very ill and confused employee whose wife is not present. No further efforts are made to rectify the flawed advice. The employee dies before the benefit commencement date he selects. The plan administrator refuses to recognize a 100% joint and survivor annuity election. Had the employee been appropriately advised at the time of the first call or had proper efforts been made to fix the incorrect information he was given his wishes could have been fulfilled. The employee's widow now seeks appropriate equitable relief for the harm caused by breaches of fiduciary duties by the defendants.

## JURISDICTION AND VENUE

1. This Complaint arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 *et seq*. ("ERISA"), and the principles of federal common law developed thereunder.

2. This Court has jurisdiction pursuant to the jurisdictional provision of ERISA, 29 U.S.C. §1132(e)(1), and federal question jurisdiction under 28 U.S.C. §1331.

3. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) because this is the district where the plan administrator is located, this is the district where the defendants may be found, and this is the district where the breaches took place.

## FACTUAL ALLEGATIONS

### *Key Persons, Entities and Parties*

4. Defendant Farmers Group, Inc. ("Farmers Group") is an insurance holding company that operates several affiliated insurance companies, including Farmers Insurance.

5. Farmers Group has its home office and corporate headquarters in Woodland Hills, California.

6. Decedent Charles F. Engel ("Mr. Engel") was employed as a claim adjuster for Farmers Insurance, an affiliate of Farmers Group, from February 2, 1981 until his death on May 20, 2017.

7. Mr. Engel worked for the Northland Territory of Farmers Insurance from its offices in the State of Minnesota.

8. Plaintiff Laurie K. Engel is a resident of Northfield, Minnesota. Plaintiff was married to Mr. Engel from May 20, 1983 until his death on May 20, 2017.

9. Farmers Group sponsored and funded a defined benefit pension plan for the employees of its affiliates called: *The Farmers Group, Inc. Employees' Pension Plan* (the "Plan").

10. The Plan was originally adopted in 1943 and was subsequently amended multiple times.

11. The Plan was expressly established to: "*enable Farmers Insurance Group to help its employees plan for financial security after retirement.*"

12. As an employee of an affiliate of Farmers Group, Mr. Engel was a participant in the Plan and Plaintiff was his sole beneficiary.

13. Farmers Group was a named fiduciary of the Plan with the authority and responsibility for: (1) design of the Plan; (2) content of the formal plan document; (3) funding of the Plan; and (4) appointment, removal or designation of other Plan fiduciaries, including the Plan Administrator.

14. Defendant Plan Administrator for the Plan ("Plan Administrator") was a committee comprised of five employees selected by Farmers Group to perform the function of Plan Administrator.

15. The Plan Administrator shared office space with Farmers Group in Woodland Hills, California.

16. The Plan Administrator was a named fiduciary of the Plan with the responsibility and authority to control the operation and administration of the Plan which included: (1) the sole discretion to determine benefit eligibility and amount; (2) the obligation to hire persons to provide necessary services for the Plan; and (3) the duty to comply with all disclosure obligations imposed by law.

17. The Plan Administrator drafted and distributed to participants in the Plan two documents entitled: (1) *Your Guide to Understanding Retiree Benefits and Services* ("the Plan Guidelines"); and (2) *Farmers Group, Inc. Employees' Pension Plan Summary Plan Description* ("the SPD").

18. The SPD and Plan Guidelines directed Plan participants and beneficiaries to contact *Farmers BenefitConnect* by phone or online at farmersbenefitconnect.ehr.com to answers any questions they had.

19. Defendant Willis North America, Inc. d/b/a Willis Towers Watson ("Willis Towers Watson") is incorporated in the State of Delaware, has its principal place of doing business in New York, New York, is registered to do business in the State of California and has offices within the State of California.

20. Willis Towers Watson was formed in January of 2016 by the merger of London-based Willis Group Holdings PLC with Virginia-based Towers, Watson & Company.

21. For the plan year beginning December 1, 2016, Willis Towers Watson was selected by the Plan Administrator to perform a variety of fiduciary duties for the Plan, including communicating with and advising participants/beneficiaries about their benefits through a web-based internet portal as well as telephonic and other communications platforms. In operating these various communications platforms, Willis Towers Watson used the trade name: *Farmers BenefitConnect*.

## RELEVANT FACTS

*Mr. Engel's Medical Condition and Death*

22. In May of 2014, Mr. Engel developed difficulty swallowing. Following

medical tests, doctors in the Twin Cities and the Mayo Clinic in Rochester, Minnesota concluded that Mr. Engel had advanced esophageal cancer which was not amenable to surgery.

23. Mr. Engel underwent chemotherapy and radiation treatment through early 2015 at which time treatment was suspended in favor of medical monitoring.

24. For the rest of 2015 and most of 2016, Mr. Engel did well.

25. On November 4, 2016, however, Mr. Engel was taken to the emergency room with complaints of jaundice and abdominal pain.

26. Follow-up tests revealed a mass in the abdominal aorta as well as extensive metastatic disease in the biliary ducts, liver, and spine.

27. On November 29, 2016, Mr. Engel was restarted on weekly chemotherapy and in early December of 2016, he went out of work on short-term disability.

28. Repeat scans in January and February of 2017 showed progression of his cancer.

29. Mr. Engel saw his oncologist on April 6 and April 10, 2017, due to markedly increasing jaundice and severe abdominal pain.

30. By the week of April 20, 2017, Mr. Engel was having constant, severe and debilitating abdominal pain which he rated as 10/10 despite copious pain medications.

31. From April 21-25, 2017, Mr. Engel was hospitalized in Rochester, Minnesota for adjustments to his pain medications, a celiac plexus block procedure for control of pain, and dietary consultation because he was emaciated.

32. On the morning of May 20, 2017, Mr. Engel died at home.

33. The death certificate listed the cause of death as widely metastatic esophageal cancer.

<u>Contact with Plan Representative—First Call</u>

34. On January 26, 2017, Mr. Engel telephoned *Farmers BenefitConnect* and was connected to Nicki Olson on a recorded line.

35. Ms. Olson was an employee of Willis Towers Watson acting under the trade name *Farmers BenefitConnect* as a plan representative and fiduciary.

36. Mr. Engel told Ms. Olson, that he had "*medical problems*" and expressly informed Ms. Olson that he wanted to be sure that he had set up his pension so that his wife would receive the 100% joint and survivor benefit if he died.

37. Ms. Olson advised him that if he wanted the 100% joint and survivor option, he would have to "*make an active election,*" "*separate employment,*" and "*start your payments.*"

38. Ms. Olson did not explain: (1) what "*make an active election*" meant; (2) what steps Mr. Engel would need to take to "*separate employment;*" (3) what he had to do to "*start receiving payments;*" or (4) what amount of time would be needed to assure that the pension election for a 100% joint and survivor benefit would be effective.

*Contact with Plan Representative—Second Calls*

39. On March 27, 2017, Mr. Engel placed two calls on the same day to *Farmers BenefitConnect*.

40. During the first call he needed assistance because he had mislaid his password and was struggling to access the benefit estimator on the web portal.

41. During the second call, Mr. Engel was put through to plan representative Alexa Porteous on a recorded line.

42. Ms. Porteous was an employee of Willis Towers Watson acting under the trade name *Farmers BenefitConnect* as a plan representative and fiduciary.

43. Mr. Engel explained that he was trying to use the benefit estimator but was having difficulty doing so. He told Ms. Porteous that he had *"very extenuating circumstances as far as my health"* and he may have to leave the company.

44. Ms. Porteous assisted Mr. Engel in accessing the benefit estimator on the portal but asked him nothing more about what needs he might have because of his extenuating health circumstances.

### Contact with Plan Representative—Third Call

45. On April 17, 2017, Plaintiff (with Mr. Engel present) called *Farmers BenefitConnect* and was put through to plan representative, Mila Thongphachanh, on a recorded line.

46. Ms. Thongphachanh was an employee of Willis Towers Watson acting under the trade name *Farmers BenefitConnect* as a plan representative and fiduciary.

47. Plaintiff explained that her husband was out on disability dealing with cancer and pain and it was uncertain whether he would be able to return to work, but he wanted to assure that she would receive the 100% joint and survivor option if he died. Trying to make this happen was "*all he is thinking about,*" she reported to Ms. Thongphachanh.

48. Ms. Thongphachanh's responses to Plaintiff during the call were incorrect, confusing, and imprudent in several ways.

49. Ms. Thongphachanh: (1) confused the idea of a 100% beneficiary (meaning sole beneficiary) with a 100% joint and survivor annuity option; (2) misinformed the Engels that if Mr. Engel were to request his pension kit and sign an election form for the 100% joint and survivor benefit, this choice would be honored even if his death occurred before pension payments started; (3) erroneously told them that he could request a pension kit and it would remain good for 90 days and then if he wanted to do so he could just request another kit; (4) recommended that Mr. Engel wait until his following birthday to get a higher pension amount; (5) told the couple not to give up and to think he would get better and beat the illness; and (6) never explained the suspension of benefits feature of the Plan that would have permitted Mr. Engel to retire immediately, lock in the 100% joint and survivor annuity, but still return to work later if his health improved.

*Contact with Plan Representative—Fourth Call*

50. Willis Towers Watson's supervisory staff identified that misinformation had been given during the phone call on April 17, 2017 and directed Ms. Thongphachanh to make a corrective call.

51. On April 20, 2017, Ms. Thongphachanh called on a recorded phone line and spoke with Mr. Engel who was alone at home.

52. Ms. Thongphachanh proceeded with the call even though it was apparent from the start that Mr. Engel was very ill, he was confused, his speech was impaired, he wished his wife was present, and he did not understand Ms. Thongphachanh. But he did tell her he needed a pension kit right away.

53. Ms. Thongphachanh's corrective call was also ineffective because she used vague, confusing and imprecise language such as telling Mr. Engel he had to be "*staying with your spouse*," apparently to mean that Mr. Engel had to be alive at the time his pension commenced.

54. Furthermore, Ms. Thongphachanh incorrectly conflated the terms "*retirement date*" and "*benefit commencement date*" throughout the call.

55. Most importantly, Ms. Thongphachanh did not explain in a manner that effectively communicated to Mr. Engel that any benefit election he made would not be effective unless he survived until the benefit commencement date that would follow his retirement date.

56. Following this call, no representative of Willis Towers Watson or the Plan Administrator did anything further to follow-up on the incorrect call of April 17, 2017 or the ineffective corrective call of April 20, 2017.

57. After speaking with Ms. Thongphachanh, Mr. Engel telephoned his wife at her workplace and told her that the plan representative with whom they had spoken had called back and said she was mistaken when she advised that Mr. Engel could request multiple retirement kits to make an election. When Ms. Engel asked if the

plan representative had said that an election would not be honored if death occurred before retirement, Mr. Engel reported that she had not.

58. The couple was left with the incorrect understanding that Mr. Engel only needed to request a kit and fill out the election forms to assure the 100% joint and survivor benefit would be honored even if death occurred before Mr. Engel's benefit commencement date.

59. Mr. Engel detrimentally relied on this misunderstanding and did not expedite the process for completing an election that his wife would get the value of his entire retirement benefit.

60. Had Mr. Engel been correctly advised, he would have selected a retirement Date during the month of April of 2017, he would have elected the 100% joint and survivor benefit, and he would have been assigned a benefit commencement date of May 1, 2017.

61. Under those circumstances, Plaintiff would have received the 100% joint and survivor benefit following his death on May 20, 2017.

*Contact with Plan Representative--Fifth Call*

62. On May 1, 2017, Mr. Engel called the HR Service Center to report he wanted to retire as of June 7, 2017.

63. The HR Service Center representative entered Mr. Engel's planned retirement date for the purposes of employment separation and various employee benefits plans, such as medical, dental, and life insurance. The representative did not send Mr. Engel a kit to designate his Pension Plan retirement date.

*Contact with Plan Representative—Sixth Call*

64. On May 11, 2017, Mr. Engel called the number for *Farmers BenefitConnect* and spoke with plan representative, Sarah Brennan, on a recorded line.

65. Ms. Brennan was an employee of Willis Towers Watson acting under the trade name *Farmers BenefitConnect* as a plan representative and fiduciary.

66. Mr. Engel told Ms. Brennan that June 7, 2017, would be his retirement date and that he wanted the 100% joint and survivor annuity and asked that he be sent a pension kit.

67. Ms. Brennan advised Mr. Engel that the pension election kit would be sent to him via regular mail and should arrive within five business (*i.e.* by May 18, 2017).

68. On May 13, 2017, Mr. Engel's supervisor, John Stupka, came to the Engel home to collect company property. During this encounter, Mr. Engel informed Mr. Stupka that he was waiting for a retirement kit to come to him and he wanted to make sure his wife would receive the 100% joint and survivor benefit. Mr. Stupka promised to make sure everything went smoothly for Mr. Engel's retirement process.

69. Mr. Engel died on May 20, 2017.

### Contact with Plan Representative--Seventh Call

70. On May 25, 2017, Plaintiff called *Farmers BenefitConnect* and spoke with plan representative, Vanessa Awdish, on a recorded line.

71. Ms. Awdish was an employee of Willis Towers Watson acting under the trade name *Farmers BenefitConnect* as a plan representative and fiduciary.

72. Plaintiff reported her husband's death to Ms. Awdish.

73. Plaintiff told Ms. Awdish that her husband had wanted to elect the 100% joint and survivor benefit and had been anxiously waiting to receive the kit to do so, but nothing had yet arrived in the mail.

74. When Plaintiff asked if the Plan would honor her husband's intention to provide her with the 100% joint and survivor benefit even though he had not completed the forms, Ms. Awdish responded the team would have to review all of the information and determine what will happen but that "*most likely*" the Plan would provide the benefit.

10
COMPLAINT

75. When Plaintiff eventually received the kit in the mail, the cover letter to Mr. Engel was dated May 13, 2017, but the postmark on the envelope was dated May 25, 2017.

76. Even though Willis Towers Watson knew that Mr. Engel was very sick, and that time was of the essence, Willis Towers Watson did not send out the pension kit for delivery within five days as promised but waited until after his death to do so.

### *Claim for Benefits*

77. Plaintiff requested that the Plan allow her the 100% joint and survivor benefit even though the pension form had not been completed because that was her husband's clearly expressed intention.

78. By email dated June 7, 2017 sent to the personal email of Plaintiff's son, Kathy LeBoyer, the HR Shared Services Director to whom the issue had been escalated, denied Plaintiff's claim writing:

> Under the provisions of the plan, since [Mr. Engel] had not officially commenced benefits [when he died] and the paperwork [was] not received with a formal election, we cannot provide the surviving spouse with the 100% joint and survivor option even if this was his "intent."

79. By letter dated November 3, 2017, Ms. Engel's prior counsel, Andrew Holly, demanded a remedy for the harm resulting from the defendants' breach of fiduciary duties.

### *Response of the Plan Administrator to Claim for Breach of Fiduciary Duty*

80. On or before November 7, 2017, Albert Cortez, an Employee Benefits Manager for Farmers Group acting on behalf of the Plan Administration committee, asked Kate Ehrhardt, a Service Center Team Lead from Willis Towers Watson, to review the telephone calls between *Farmers BenefitConnect* and the Engels.

81. On November 7, 2017, Ms. Ehrhardt sent an email to Mr. Cortez advising that while she had not listened to the tapes, she had reviewed the

representatives' call notes and from those she had prepared a summary that was contained in the same email.

82. On November 9, 2017, Mr. Cortez sent Ms. Erhardt's first email to Ernestine Phillips, a Human Resources Specialist acting on behalf of the Plan Administrator, and requested that the email be made part of the committee's packet for the Engel claim.

83. On or before November 10, 2017, Bob Foster, another Employee Benefits Manager acting on behalf of the Plan Administration committee, asked Ms. Ehrhardt to listen to the tapes and send a report.

84. Ms. Ehrhardt sent a second email to Mr. Foster dated November 10, 2017, indicating she had listened to the tapes and from that exercise had prepared the more detailed summary that followed in the email along with her own conclusions as to the accuracy of the information given.

85. Mr. Foster forwarded Ms. Erhardt's second email to Ms. Phillips with the request that it be added to the committee's packet for the Engel claim.

86. On the same date, November 10, 2017, Ms. Phillips sent a letter to Mr. Holly advising that the Plan Administrator was treating his letter as a request for benefits and doing an investigation.

87. A memorandum was prepared for the representatives of the Plan Administration committee that was accompanied by the two emails from Ms. Ehrhardt—but not the actual tapes of the conversations.

88. The committee met to consider the claim on November 21, 2017.

89. The Plan Administration committee denied the claim and sent Attorney Holly a letter dated November 29, 2017, stating that since Mr. Engel was not alive as of the benefit commencement date, no intention for a 100% joint and survivor benefit election would be honored.

## Count I:
## BREACH OF FIDUCIARY DUTIES

**BY DEFENDANT WILLIS TOWERS WATSON**

90. Plaintiff restates and re-alleges the allegations contained in the foregoing paragraphs.

91. Willis Towers Watson was a fiduciary of the Plan through delegation from the Plan Administrator of the fiduciary duty of disclosing plan information to participants and beneficiaries through the communicating, counseling, and advising functions that Willis Towers Watson performed via online and telephonic platforms operated under the name *Farmers BenefitConnect*.

92. Willis Towers Watson, in the exercise of its delegated fiduciary duties to communicate, counsel, and advise participants and beneficiaries, was obligated to do so with that degree of care, skill, prudence, and diligence a reasonable person acting in the circumstances would exercise, and for the exclusive purpose of providing benefits to participants and beneficiaries as is required by 29 U.S.C. §1104(a)(1)(B).

93. On April 17, 2017, with full knowledge that Mr. Engel was suffering from cancer, Willis Towers Watson's employee breached fiduciary duties to Plaintiff and Mr. Engel by providing misleading, incorrect and confusing information to them that left them with the understanding that Mr. Engel's intention to elect the 100% joint and survivor annuity would be honored if Mr. Engel requested a kit and signed up for this benefit –even if he died before the benefit commencement date.

94. Willis Towers Watson's supervisory employee(s) were fiduciaries of the Plan and in that role identified that Ms. Thongphachanh had given incorrect, misleading and confusing information to the Engels on April 17, 2017, and directed Ms. Thongphachanh to make a corrective call to the Engels.

95. On April 20, 2017, Ms. Thongpachanh called Mr. Engel but failed to remedy the impact of the incorrect information she had previously provided, and instead further confused Mr. Engel.

96. Willis Towers Watson's supervisory employee(s) were fiduciaries of the plan and failed to monitor the corrective call made by Ms. Thongphachanh and failed

to take any other action to remedy either the initial incorrect information she had given or the failed corrective call.

97. At all relevant times, Willis Towers Watson's supervisory employee(s) failed to properly train their subordinates: (1) about the terms of the Plan; (2) how to respond to questions about the Plan's terms; (3) how to assure adequate information-sharing occurred; and (4) how to document the content of their calls accurately.

98. At all relevant times, Willis Towers Watson's supervisory employee(s) failed to properly monitor: (1) how their subordinates performed their duties; (2) how erroneous information was corrected; and (3) how corrections that were attempted were fulfilled and documented.

99. Because of these breaches of fiduciary duties by Willis Towers Watson and its employees, Mr. Engel did not request a retirement date in April of 2017 and did not request a benefit commencement date of May 1, 2017.

100. Mr. Engel would have chosen these dates and had he done so he would have made an effective election for the 100% joint and survivor election before his death.

101. As a result of the described fiduciary breaches by Willis Towers Watson and its employees, Mr. Engel's clearly and repeatedly expressed intention for a 100% joint and survivor benefit was denied and Plaintiff was permitted only the default 50% joint and survivor benefit.

## Count II:
## BREACH OF FIDUCIARY DUTIES
## BY DEFENDANT FARMERS GROUP

102. Plaintiff restates and re-alleges the allegations contained in the foregoing paragraphs.

103. Farmers Group was the Plan's sponsor, designer and sole funder.

104. Farmers Group knew that the Plan was established and designed *"to enable [participants] to plan for financial security after retirement."*

105. Farmers Group was a named fiduciary of the Plan with the responsibility to appoint, remove or designate the five persons comprising the Plan Administrator.

106. In exercising the fiduciary responsibly to appoint the persons serving as the Plan Administrator, Farmers Group was bound to act with the care, skill, prudence, and diligence that a reasonable person acting in a like capacity and familiar with such matters would use as is specified by 29 U.S.C. §1104(a)(1)(B).

107. Farmers Group selected the five individuals who served on the committee that functioned as the Plan Administrator and the Plan Administrator selected Willis Towers Watson to perform the delegated counseling and advising functions through *Farmers BenefitConnect.*

108. Farmers Group, as plan sponsor and plan designer, knew or should have known that the Plan was very complex, covered many participants and beneficiaries in many states, included terms that differed depending on the affiliate group in question, and had been in existence for many years.

109. Farmers Group knew or should have known that for any entity to provide informed and competent advice about the Plan, it would have to have detailed training and significant expertise in the terms of the Plan.

110. Farmers Group took no steps to supervise the Plan Administrator to assure that this training would occur.

111. As a result, incorrect, incomplete, and erroneous advice was provided to Mr. Engel and his intention that his wife, the Plaintiff in this case, receive a 100% joint and survivor pension was not accomplished before he died.

112. Plaintiff was therefore deprived of the difference between the 50% joint and survivor default benefit and the 100% joint and survivor benefit option that her husband repeatedly expressed an intent that she receive.

## Count III:
## BREACH OF FIDUCIARY DUTIES
## BY DEFENDANT PLAN ADMINISTRATOR

113. Plaintiff restates and re-alleges the allegations contained in the foregoing paragraphs.

114. The Plan Administrator was a named fiduciary of the Plan with fiduciary duties to: (1) determine benefit eligibility and amount; (2) hire persons to provide necessary services for the Plan; and (3) comply with all disclosure obligations imposed by state or federal law.

115. In executing its fiduciary duties, the Plan Administrator was obliged to exercise that degree of care, skill, prudence, and diligence that a reasonable person acting in like circumstances would employ as is specified by 29 U.S.C. §1104(a)(1)(B).

116. The Plan Administrator breached its fiduciary duties of determining benefit eligibility and amount by failing to listen to the tapes between *Farmers BenefitConnect* and the Engels and by relying on Willis Towers Watson's interpretation of selected telephone calls even though it was Willis Towers Watson's conduct that was in question.

117. The Plan Administrator breached its fiduciary duties of determining benefit eligibility and amount by failing to review or consider the evidence that established how plan representatives gave incorrect, incomplete, and erroneous information to the Engels.

118. The Plan Administrator breached its fiduciary duty to hire persons to provide Plan services by: (1) selecting Willis Towers Watson to perform the fiduciary functions of communicating, counseling, and advising Plan participants and beneficiaries through *Farmers Benefit Connect* when Willis Towers Watson and its employees did not have the competence to do so; (2) failing to assure that Willis Towers Watson's employees were adequately trained and informed about Plan terms and practices; and (3) failing to reasonably monitor Willis Towers Watson's performance of these fiduciary duties.

119. Mr. Engel and Plaintiff were thereby provided with incorrect, incomplete, and erroneous advice which led to Mr. Engel not making an effective election of the 100% joint and survivor benefit for his wife.

120. Plaintiff has thus been deprived of the difference between the 50% joint and survivor benefit and the 100% joint and survivor benefit.

**WHEREFORE**, Plaintiff requests an Order and judgment against Defendants, individually or collectively, that would provide her with injunctive and other equitable relief as provided by 29 U.S.C. §1132(a)(3) such as:

i. An equitable surcharge for the difference between the 100% and the 50% joint and survivor benefit for Plaintiff's lifetime;

ii. An Order equitably estopping Defendants from enforcing the default 50% joint and survivor annuity and an equitable injunction to recognize Plaintiff as beneficiary of a 100% joint and survivor annuity;

iii. An award of prejudgment interest on the amount of the joint and survivor benefit denied to Plaintiff from May 20, 2017 until judgment;

iv. Reimbursement of the costs, expenses and attorney's fees incurred by Plaintiff in this action as provided for by 29 U.S.C. §1132(g); and

v. Such other and further appropriate equitable relief as the Court deems just and proper.

DATED: January 9, 2020            KANTOR & KANTOR, LLP

                                           By:  /s/ *Susan L. Meter*
                                                 SUSAN L. METER
                                                 ELIZABETH HOPKINS
                                                 Attorneys for Plaintiff,
                                                 LAURIE K. ENGEL

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525